We'll hear the first case on the day calendar, Stephen Kass v. City of New York Good morning, Your Honours. May it please the Court. Melanie West on behalf of the City of New York. The issue in this case is whether competent police officers would believe that they had the authority, while stationed at a public protest, to direct someone to move who was standing in an area outside, immediately abutting the protest area within the flow of pedestrian traffic. If they cannot do that, or if they do not have the authority to arrest someone who repeatedly refuses to comply with those orders, then they have no means of preventing protests from spilling outside of a designated area. Let me ask you this. They have to have the authority to arrest or move somebody along if the person is unlawfully positioned in that particular spot, right? Just police say so is not enough. There's got to be a reason, a good reason, to take a citizen off the sidewalk and move them along, or tell them what to do, or tell them where to jump, or to leave that area. Absolutely, Your Honour. It cannot be an arbitrary order. I'm not saying it's arbitrary. It's got to be justified by some sort of a public reason. Yes. And you tell me exactly what the reason was here. Sure, Your Honour. Because you have the protesters who are behind a barrier. That's right. They are protesting. Presumably they are exercising their First Amendment rights by being behind the barrier, right? Yes. And they are saying things and speaking, if you will. And Mr. Cass is walking down the sidewalk and he wants to find out what they're up to. Yes. So he starts talking to them. Yes. Listening to their story. Now, up to this point, there's no public issue about this, is there? Well, Your Honour, the facts of the complaint state that Mr. Cass talked to the protesters for approximately two minutes before he was approached by a police officer. Police officers who are stationed at an ongoing public protest should have some discretion to anticipate problems and head them off. What was the problem that they were anticipating? You know, somehow there was going to be a mob there or that people would collect? Because there was nobody there. The sidewalk was free at the time. Well, everybody who was engaged in the protest was contained on one side of the barricades. And the problem that they were anticipating was that allowing an individual to stand on the other side of the barricade and engage with the protesters would create a situation where there was ambiguity as to whether or not you could stand on the other side of the barricade. What's the ambiguity? The ambiguity is that now you're allowing one person to stand on the other side of the barricade. He wasn't protesting. But he was engaging with the protesters. Yes, he was listening to what the protesters had to say. But the police were keeping the sidewalk clear for pedestrians who were not engaged with the protest to go on their way. And if you allow one person... He wasn't blocking the sidewalk. He wasn't blocking the sidewalk completely, Your Honour. But if you allow one person to stand on the other side of the barricade, stationary, engaging with the protesters, then it's difficult to understand how when a second person joins them, you would be able to direct that second person but not the first to leave. Was there a sign there or anything that would let someone know or understand that they couldn't stand there? There's nothing in the record other than that there were barricades erected, the protesters were clearly on one side of the barricades, and there were police on the sidewalk. And what we see in the video is that everybody else is walking by. This is sort of anticipatory law enforcement. It's not an actual problem that we're dealing with there. In other words, the traffic wasn't stopped to watch this. There wasn't a crowd forming at that time. Other pedestrians were free to move back and forth at the time. It was a question of... I mean, your argument has to be that the police were anticipating a problem that could occur, presumably, if more and more people stopped there. Is that essentially your argument?  In the context of an ongoing protest, police should have some discretion in the way that they enforce their objectives. And so here, where their objective was to keep the sidewalk clear, yes, the sidewalk was not blocked. You'd agree that he has a First Amendment right to listen to the protest, right? Sure, yes, Your Honor. So let's assume that a person is walking down the sidewalk and there's a sign on the side of a building that says, this is a landmark building and blah, blah, blah. The city has expressed this view and the person wants to read the sign. Police can come up and grab that person, say, I'm sorry, this could create a congestion. Move along. The most important distinction there, Your Honor, is the context of an ongoing public protest. But an ongoing public protest is protected speech. Of course, Your Honor. And police officers invited Mr. Cass to go inside the park if he wished to exchange ideas with the protesters. Oh, but that's asking him to associate with the protesters. Then his partners from the law firm come by and there he is. He's in the Occupy Wall Street. I don't think the NYPD has a duty to ensure that Mr. Cass keeps his job, Your Honor. No, but what I'm saying is, I don't think he wanted to associate with them. I think he just was curious to find out what they were saying. But your First Amendment right doesn't include a right to stand wherever you want while exchanging ideas, Your Honor. This was a reasonable restriction under the circumstances, which was that... I agree with you that the protesters being behind the barrier, that was a reasonable time, place, and manner restriction. But you can't ask the police to distinguish between protesters and non-protesters. They can't get into an inquiry as to whether or not Mr. Cass was interested in joining the protest, whether he was engaging with the protest. No, all they had, the information they had, was that Mr. Cass was there listening to and talking to them and trying to find out what their position was. But Your Honor, if you agree that the protesters were correctly kept behind the barricades, it's difficult... That Mr. Cass ought to be? Anybody who wants to talk to them should be. It's difficult to understand how the police could justify telling a protester who came out and stood on the other side of the sidewalk that he would have to leave if Mr. Cass could stand there talking to the protesters about the ideas involved in the protest. And it wasn't a huge burden on him to ask him to relocate a few feet to the inside of the barricade, Your Honor. And by the way, I should point out that there's no First Amendment claim in this case. Wes, yeah. And I thought that your main argument had to do with the fact, or the main argument was that reasonable officers could reasonably disagree about whether Mr. Cass was subject to arrest. That's exactly right, Your Honor. There was no clearly established authority telling these police officers that they couldn't act as they did. They were stationed outside the protest for the purpose of keeping the protest contained, and they saw an individual stop on the other side of the barricade and start engaging. They approached him and asked him to move seven times, and he refused, and at that point in time, it was reasonable for them to arrest him. There's nothing clearly established that says that in that situation, police officers can't arrest someone. You're saying, okay, well, then we have to look at what they arrested him for. Yes. Obstructing governmental administration. Is that because once a policeman tells you to do something, if you don't do it, you can be arrested? Regardless of the lawfulness of what the policeman says? Well, the lawful objective in this case, the police were already at the scene before Mr. Cass arrived. Right. They were there with an objective. Of course. They were there to make sure the protesters stayed where they belonged. That's right. And so when Mr. Cass stopped on the sidewalk, they perceived, reasonably, that he was interfering with their objective of keeping the sidewalk clear, particularly when, upon seven requests to leave the area, he refused to do so. Their objective was to keep the sidewalk clear of what? I mean, everybody had to move there? Yes, Your Honor. It was effectively a no-standing zone. They were asking people to move along. If I walk in front of, down in that area, walk in front of Trinity Church and stop and admire the architecture of the church, I could be pushed along, and if I refuse to do that, I'm obstructing government? Well, again, Your Honor, it's the context of the protest that makes all the difference. In this court, in Markovage— Somehow that's off-limits, to watch a protest, as opposed to looking at a building or admiring something else. But this is somebody stopping in the area, immediately abutting the protest, immediately on the other side of the barricade, and engaging with protesters. Let's go back to the First Amendment question. I know that there's not a First Amendment claim here, but what if, I don't know, you're Barbara Walters and you're right there, what do the police then have the ability, under New York law, New York City law, I guess, or New York State law, to arrest Barbara Walters? Because she wants to talk to the protesters, or just listen, not even talk? If the police approach Barbara Walters and ask her to relocate 10 feet multiple times and she refuses, yes, I think that they do. This is not a question of First Amendment rights. Mr. Cass was at liberty to— But what I want to know is— It infuses the thinking about the case. If his First Amendment rights are being violated, that does affect one's view. I mean, you know, judges pay attention to these things, of the case, doesn't it? I mean, even though it's not alleged as a violation of the First Amendment, the question is, was he lawfully there? And if he's exercising his First Amendment rights in a lawful manner, then it seems to me that that's relevant. Yes, Your Honor. I understand that there's an aura of First Amendment scrutiny to this case, but in my view that is extinguished by the fact that Mr. Cass was invited to go inside the park and exchange ideas with the protesters. That raises another First Amendment question, doesn't it? Freedom of association, or freedom not to associate. In this case, the government's saying you must associate, you must go in there, and if you don't associate, you can be perceived as associating. I don't think it's clear that relocating briefly from one side of the barricade to the other creates any First Amendment issue, Your Honor. It seems to me that what happened here is that the concern of the Occupy Wall Street, the police with Occupy Wall Street, was that somehow the protest would get out of control. But that then spilled over to whether or not a person who stopped to talk to them or listen  Yes, because it was reasonable to assume that once they allowed people to start stopping on the sidewalk and engaging with people on the other side of the barricade, there would not be a justification for stopping people from coming inside the park to the other side of the barricade, stopping there and engaging with people on the other side of the barricade. The barricade was there. And Mr. Cass made it very clear that he was not an Occupy Wall Streeter. Your Honor, the police cannot use that as a- The Occupy Wall Street office. They can't treat people differentially based on whether or not they identify with the goals and aims of Occupy Wall Street. The police were there to enforce a content-neutral restriction, which was to keep stationary individuals on one side of the barricade and keep the sidewalk clear for pedestrians going along their business. There's nothing- Mr. Cass wasn't notified of the fact that there was a time, place, and manner restriction against- He was notified- Just as listening to the message that was being- He was given notice that he should leave the area because the sidewalk was being kept clear. Seven times he was asked to leave. He was given the option of either going along his way or relocating inside the park, and he refused. He insisted on standing in that area, and this is after having had several minutes to speak with the protesters. At that point in time, this is no longer- If he was there illegally or unlawfully by some construct, then for sure the police had the opportunity to move him along, or even if there was a legitimate public security or public convenience aspect to this, to moving him along. In other words, he was obstructing the sidewalk or obstructing the street, but if he wasn't there under those reasons, it's very hard for me to see how he could be lawfully told to leave. He made his position very clear that he wasn't a member, he didn't want to go in and join them, and I suppose the reason he didn't- Maybe his problem was that he went to law school. He thought that he was acting in a perfectly legitimate way that's protected in our society. But the question in this case is not what Mr. Cass thought. This is a qualified immunity case where the question is whether it was reasonable for the police officers to behave- I agree with you on that. And so I'll point you to this court's decision in Markovage, Your Honor, where there was a designated protest area, two protesters left the designated protest area, and when they were asked to leave and refused to do so, this court found probable cause for arresting- to arrest them. Kept you well past your time. And you have three minutes for rebuttal. Yes, thank you. Let's hear from the other side. Good morning, Your Honors, and may it please the court. I'm Andy Chelley, I'm here with Allie Frick, and we represent the plaintiff of Pele, Steven Cass. Your Honors, in almost 25 years of law practice in this area, I've never seen anything quite like this. A 73-year-old man is handcuffed and arrested for pausing on an open sidewalk to talk to a protester across a barricade. What Ms. West said in her argument, and what's clear in the papers, is that it's undisputed that Mr. Cass was not blocking the sidewalk, he wasn't protesting outside a protest zone, he stopped to ask a question. And under these circumstances, no reasonable officer could possibly believe that Mr. Cass violated 240.20.06, the disorderly conduct statute, or section 195.05, which is the obstruction of governmental administration statute. But let's assume that he's lawfully where he is, and the police act perhaps beyond what they should be permitted to do in arresting him, and then he starts struggling and shouting  Right, of course. Would he be protected under those circumstances from a disorderly conduct charge? Of course. Maybe there are limits. I mean, you know, he can't turn around and slug the police. Right. But if he objects vociferously, as he did, and starts causing a disturbance within the park, as is evident from the video, there were some people in the park who were taking objection to what the police were doing. Then maybe there's a, you know, a conduct issue there. What the cases say is that you cannot be held responsible for disorderly conduct if what creates the disturbance, the fear of public harm and public alarm, is the behavior of the police and the interaction with the police. That's a case, we cite People v. Blair, there are many cases that say that. The good news about Your Honor's question is that that is not what happened, and we have the video that demonstrates that. At no point in time— Is it clearly established that the police officers could not arrest him after he refused seven orders to move along? Yes, I think it is. Based on—I knew that would be your answer—based on what is it clearly established? Particularly when you put into context the Markievicz case. Okay. Well, let me put Markievicz aside for one second and simply say that under this court's precedent, it's clearly established that, as Judge Walker suggested in his questions, the police have to have a basis for asking somebody to move along and arresting them for not doing so. There has to be an independent violation of the penal law. That's just the Fourth Amendment. And as this court said, as then-Judge Sotomayor— But the claim is false arrest. That's right. So they've got to have a basis to arrest. That's right. And then the question is whether Mr. Cass, in refusing their order and then tussling with them a little bit, was subject at least to this disorderly conduct charge or to the other charge. The narrow answer to Judge Shinn's question is that the order to disperse must be lawful and the government activity that is interfered with must be lawful. And that's in every false arrest case, whenever there's disorderly conduct of this sort and whenever there's obstruction of governmental administration. If you don't have that, no reasonable officer could believe that she or he— Does it depend on whether the sidewalk is crowded or not? I think it does. I mean, if New York has a lot of crowded sidewalks, and if I'm walking down a sidewalk and I stop to look at a building or admire some architecture, and people are having to kind of get around me and it's hard, makes it harder to do, wouldn't the police be authorized to come to me and say, you know, this is a problem here, come back at a time when it's less crowded? One person on the sidewalk, it's a hard case. I mean, the Markavich case is— There's two people on the sidewalk and the court says you can't just look at the fact that it's only two people, it's the potential for more. If you let the two people stay, what happens with the third and the fourth? Right. Well, look, I mean, we ask police to enforce the law and, in fact, they have to wait until the law has been broken or there's probable cause to believe that the law has been broken, that there is, in fact, blockage of the sidewalk. The context is you've got protesters behind the barricade, you've got a busy sidewalk, you've got people walking back and forth. The video shows constant flow of— Including protesters. Including protesters, but they're moving, they're moving, they're carrying their signs and moving. And a uniformed police officer has been told you've got to keep people moving on the sidewalk. Is a police—do you really expect a police officer to say, oh, I'm going to make an exception and let this one man stay because he's a 73-year-old lawyer? I don't think it's an exception. I think it's the rule. The rule is that the police cannot require you to leave and arrest you for not leaving. What if the police could tell—the higher-ups could tell these officers, we don't want to have a problem associated with this protest developing on the sidewalk, and therefore, we want to keep people moving because we don't want to have an obstruction of the sidewalk. And so, under those circumstances, then you're saying, well, we're going to second-guess the police's judgment to do that unless there happen to be more than one person. Maybe there have to be three or four. That's getting kind of fine-tuning as to what the police are being required to do. And so, the question here is that, you know, were the police acting effectively, unreasonably? I think this Court's decision in Markavage is absolutely crystal clear. We embraced the Markavage decision for purposes of this motion because in Markavage, exactly what Your Honor is suggesting happened in a very specific factual context where there was an analysis. There was a closed sidewalk on the west side of 7th, an open sidewalk on the east side of 7th, 660,000 riders per day going into Penn Station, 50,000 attendees at the convention. Under those circumstances—and, of course, notice that this was happening as well, all of those things, to Judge Lohier's point, all of these things were— You can call me Justice whenever you want. I'm hoping for you to get elevated, Your Honor. All of these things were considered by the police and under a time, place, and manner context and restriction that was permitted by this Court at summary judgment. This couldn't be more different than that. Under these facts, there is no sidewalk restriction, no stopping restriction in the record. It's simply not there. In fact, if you watch the video carefully, even Sergeant Alfieri, who is presumably the commanding person, at least in the scene, he doesn't say, Mr. Cass, you have to move along because we have a no-stopping zone here. He says, you're blocking traffic. Of course, Mr. Cass wasn't blocking traffic and Mr. Cass, being a New Yorker and being a lawyer and having a law degree, points out to the sergeant, look over there, I'm not blocking anything. That is what the city characterizes as a refusal to move. He's remonstrating with the officer, as New Yorkers do every day. Do you agree that the police were engaged in police activity there? They were engaged in police activity. I don't know that they were engaged in a specific function for purposes of OJ. But you agree that there was police activity, there were a bunch of police officers. Do you agree that one way of looking, if you're an officer, at what Mr. Cass was doing when they asked him, in connection with their police activity, they asked him to move along, do you agree that at some point they may have viewed him as impeding that activity? I don't think so. Why not? I don't think so. Because he wasn't doing the thing that they were seeking to regulate, which is protesting. They were regulating a protest and they set it up in such a way that the protesters would be on one side of the barricades and that ordinary non-protesting people who were not carrying signs and not shouting slogans and not lying down in the street and not obstructing traffic would be permitted on the sidewalk side. The whole purpose of that construct, it seems to me, was to permit there to be listeners, to Judge Walker's point. It's about the right to listen, and it's true. There's not a First Amendment claim, per se, in this case. It's simply a claim that you do have the right to listen. Judge Walker also asked about anticipatory law enforcement, and wasn't that part of what was happening here? The officers were trying to anticipate that there might be more people who would stop, first Mr. Cass, then a second, then a third, and then you've got a more difficult situation to control. And I think if they had done it in the way that the police department did it in Markavich and it was properly balanced and constitutional, that would have been okay. So if five Mr. Casses, five lawyers, could do exactly what Mr. Cass did, that would have been okay. If there had been a crowd gathered there, I think, that was blocking the sidewalk. What's a crowd? Pardon me? What's a crowd? I mean, this is part of the problem, is that a crowd begins with one person, right? Right. But the Car-Cell. I'm sorry to interrupt, Judge. Go ahead. The Car-Cell case from the Court of Appeals in New York from 1957 says a crowd has to have at least three people. Here we had one. So to suggest that one person creates probable cause of three people seems to me unreasonable on its face. I see that my time is up if there are no further questions. Thank you. We'll hear the rebuttal. Thank you, Your Honors. I'd like to return to the Markavich case because I think that the fine parsing that's taken place in distinguishing Markavich from this case points clearly to the fact that a reasonable police officer would not be on notice that Markavich is in any way different from this scenario. What we have here is— Your point is that the fact that the parties are debating the significance of Markavich cuts in your favor, that, you know, the police could debate this question. Yes, Your Honor. I think when we're saying, well, one person is a hard case, two people might make the difference, we're talking about the kind of parsing that can only take place in a courtroom after the fact. And that's not the standard to which we hold police officers on the scene. Here, police officers were engaged in what's concededly a legitimate police activity, regulating a protest. And, you know, we disagree with the idea that that meant that they could only police the actions of protesters. The idea of regulating a protest is to prevent any situations or problems from occurring. Well, shouldn't there be a sign and no demonstration zone sign or something? Well, Markavich involved barricades and police officers telling people to leave. There's nothing in the case that says that there were signs. No, but it's— No, it's categorized as a no demonstration zone, a demonstration zone— But not by signs, Your Honor, by police officers telling people. And in this case, you have a barricade and you have police officers telling Mr. Cass to leave. It's not particularly different. After he's already there. Look, this is troubling to me because I can see anybody showing up at the barricade just to follow up on Judge Walker's questions. And all of a sudden, you find yourself being arrested. Well, being asked to leave, Your Honor, refusing seven times, refusing to relocate inside the park— Now, if he had just said, I'm not going, and not tussled, not done anything, would he have been subject to arrest? Yes, Your Honor. If police could reasonably infer that he intended to obstruct their purpose in being there, which was to keep people moving along the sidewalk and to prevent this protest from spilling over. But in this case, we have that. We have multiple refusals to leave, refusal to agree with their attempt to accommodate him by asking him to relocate inside the barricade. We have Mr. Cass becoming belligerent and asking them to take their hands off him when they attempted to direct him away from the scene. And in those circumstances, to find that a reasonable police officer would not believe that there was a justified arrest, there's no authority to tell them that. You're saying people could disagree about whether they had the authority at that point? Absolutely, Your Honor. Reasonable police officers could disagree. The city charter gives the police officers— I'm sorry, Your Honor, I interrupted you. Your point you're making is, if they believe it's lawful for them to tell him to move along, then they've got to have some way of enforcing that. That's exactly right, Your Honor. They were there. The city charter gives them the right to regulate pedestrian traffic. So does police power. In this situation, there was a protest ongoing. If they believed that they were there to keep the sidewalk clear and keep people moving, and repeated requests to ask someone to move along— They may be wrong about whether he was impeding police activity, but people could disagree about that. Yes, Your Honor. Reasonable police officers could certainly disagree. And once they asked him to move and he refused to do so, if they didn't have the ability to arrest him, they had no ability to enforce their objective of keeping the sidewalk clear. Thank you. Thank you. A well-reserved decision.